Aetna Life Insurance Company  We've got Ms. Newell for the appellants, Ms. Chaffetz for the appellee. Ms. Newell, whenever you're ready. May it please the Court. My name is Erin Pognole and I represent the appellant, excuse me, Dina Mendoza. I'm going to take Your Honor's suggestion to jump right in and kind of identify the 12,000 pound elephant right here in this room with this case, which is the notion that the twins had coverage under their father's insurance policy upon the event of their birth. Can I ask you a question since I think we all know the facts? Yes. The complaint attached the plan and so obviously under case law, we can refer to the exhibit which is attached to the complaint in a motion to dismiss. And does not the plan itself say that obviously the newborns are covered under the plan for the first 30 days following birth? Yes. But then for purposes of coverage, then you need to look to see who is primary and then who is secondary and then you have to apply the birthday rule. Yes, Your Honor, and we recognize this principle that the documents attached are part of the pleadings. The document that is attached to the pleading is the mother's plan, right? So the mother is insured through her employer and the claims that the complaint then says that Aetna said in paragraph 22 that Aetna is the second carrier because Paul Mendoza had insurance. Now, oh, I'm sorry to interrupt, Your Honor, but that is not an entirely accurate rendition of what the complaint says. So the basis of Aetna's denial and context is king when we're talking about plausibility, right? So if you look at the allegations of the complaint, the reason for Aetna's denial was that it was secondary. It does state that primary is a different insurer, but there is no identification or indication. Isn't it your obligation then if the complaint, if Aetna is saying we denied coverage because we are the secondary, not the primary carrier, and the first rule, the birthday rule applies, then isn't it your obligation to say they're incorrect because Mr. Mendoza's birthday is in December and the mother's birthday is in January? That's exactly why I started with our 12,000 pound elephant, Your Honor. The father's birthday is not in December. There's no indication in this record of when his birthday actually is. In fact, this coordination of benefits that Your Honor referred to presupposes, and I'll begin at the very beginning of that provision, which is on page 71 of the appendix, right? So that states, some people have health and coverage under more than one plan. If you do, we will work together with your other plans to decide how each plan pays. Now, if... Your point, as I understand, is like birthday rule, smirthday rule, doesn't matter. We never get there because the antecedent question is whether the father's plan covered the newborns, and if it didn't, if you've plausibly alleged that it didn't, then the birthday rule just sort of evanesces. And that's correct, Your Honor, and it's very important, as I said, to look at the context of the denials themselves. There is no identification of the father's insurance plan in Aetna's denial letters. There's no indication whatsoever for Ms. Mendoza to be able to say, okay, in my complaint, we're going to have to come forward regarding this. Ms. Mendoza was not notified of the application of the birthday rule, supposed, right? This is an ad hoc justification for the denial that occurred after this complaint was filed. Okay, so that's not going to be something that this court has to give any deference for, and quite frankly, it's the appellant's position that the trial judge jumped the gun here. However, if you look at the motion to dismiss itself, Aetna actually brings up the explanation or the COB, right, the coordination of benefits, for the purpose of asking for a joinder, a mandatory joinder of the father's insurer, and why? So that the court could determine who was the primary. If you're looking at the allegations of this complaint, and I do think it's important to distinguish between coverage and enrollment, right? There is an allegation that the twins weren't enrolled, and we understand that it's different than whether they had a pre-enrollment coverage under the father's plan, but there's also an allegation that they had no coverage, okay? That's paragraph 27, that's paragraph 22. In both instances, Ms. Mendoza actually does come forward with some detailed fact allegations stating that the father did not have coverage for the twins. How could that be possible, right? Don't children, dependent children, get coverage upon the event of their birth? Maybe that's standard. Let me ask you this. Yes. I don't think this is in the skimpy record that we've got, but from your just sort of like walking around understanding of the world, and I'll ask your adversaries this as well, is it just as likely in the real world that newborn, that pre-enrollment newborn coverage comes with men as that it comes with women? It just seems to like make all the sense in the world to me that a woman's plan would likely provide for pre-enrollment coverage, but it doesn't necessarily make sense to me that a man's plan would necessarily not have pre-enrollment coverage for newborns. I take your Honor's point, and I think especially in this day and age where it's much more common, you know, that, you know, the male position is not so standard going to be. I don't think that that's true. Well, you're right. I was covered with my twins under my husband's plan. Sure. So it could happen that way, and here's the point we're all talking about. We're talking about suppositions. We're talking about it could be, but you know what else could be very possible? As per the allegations of this complaint, the father could have declined coverage for the twins. Why? Maybe there was a reduction in the amount that had to be taken away from his, you know, compensation package if he declined family coverage. Another thing that could be possible if we had his plan in front of us, which we don't, is that he might have had to notify his carrier before the twin's birth in order for them to have that coverage. So those are two scenarios in which it's extraordinarily possible and very common that the father may not have actually, the twins, I should say, may not have had that coverage. I understand the argument, but again, we're faced with an exhibit that's attached to the complaint where the coordination of benefits, and it specifically says a plan that does not contain a coordination of benefits provision is always the primary plan. Obviously, we don't know what the father's plan is because it's not attached. Correct. But the plan that is attached is Ms. Mendoza's plan that specifically says that coverage only applies if the birthday rule is followed. I mean, I just don't understand why you just didn't allege what the birthday is. Your Honor, the reason is because they didn't find out, Ms. Mendoza, her trial counsel didn't know that Aetna had applied the birthday rule. It's up to Aetna to give, after two appeals, a little bit more information than just, we're secondary. Someone else is primary. See you later.  I mean, you can read the exhibit, correct? I am looking at the exhibit. This is not a difficult policy to read. Correct, Your Honor. But exactly. I think you're skipping this notion that, again, the elephant in the room. Like I said, if the twins have coverage under more than one plan, I 100% agree with Your Honor. And if we were here on a summary judgment and we had that plan in front of us, the father's plan, this would be a totally different conversation. Would it really end there, though, because there's the birthday rule, but the plan also says that if Aetna is the secondary plan, it won't pay a benefit if the primary plan's benefit is equal to or more than its benefit. So it's not that you just stop with the birthday, right? Correct. And this is even more important when you look at that motion to dismiss itself, right? Aetna doesn't ask for a dismissal with prejudice, by the way, all right? The grounds for Aetna saying that there was a failure to state a cause of action was completely different than this issue. This issue was raised solely in the context of 12b-7, which asked for a mandatory joinder of the husband's insurance for that very reason. Do you oppose, if we send this back, do you oppose having the husband's insurance plan joined? I think what needs to happen procedurally is that this complaint should be answered. Any affirmative defenses that can be raised— Can you answer my question? No, we don't oppose it. If we send it back to say that the husband's insurance should be joined? I'm sorry, Ron. I jumped the gun on your question. We don't oppose it, and we didn't actually oppose it in response. We're not going to tell people if they want to move to dismiss the complaint again. That's up to them.  We're not going to— And if— We're not the district court here. Correct. And in the record, Ms. Mendoza actually did say, if, right, assuming arguendo, that this coordination of benefits comes into play, they did agree to that mandatory joinder. So we would maintain that position here. Unless there are any more questions for me in my opening argument, I'll reserve the rest of my time for rebuttal.  Very well. Thank you so much. Thank you. All right. Ms. Jacobs, let's hear from you. Am I pronouncing your name correctly, by the way? Yes. Very well. Oh, fine. That was not an endorsement. Fine. Oh. So all pronunciations are acceptable. Samantha Heifetz for— Oh. I wasn't— I wasn't even close. Heifetz. Okay. Your Honors, I think we have— Can you address what your opposing counsel just finished with, which is, should we allow this to go back to have a joinder of the husband's insurance in order to figure out—and either you can proceed on a motion for summary judgment or maybe a motion to dismiss if the plan shows that in fact, you know, there was coverage and the husband's birthday is, you know, before or after, depending on what the birthday rule is. Look, Your Honor, in the district court, and it did move on the grounds that joinder was necessary. At this stage, the issue is that the district court correctly dismissed under 12b-6. And so there is nothing left to join another party with. And because that ruling was correct, it should be affirmed. Can I— In order to— Yes, sir. To make sure I'm understanding sort of the decision tree. So do you agree that the birthday rule only comes into effect in the event that there are two plans that both cover the event? That is correct, Your Honor. So if there is a plausible allegation here that the husband's plan, in fact, doesn't cover the newborns, then the birthday rule, we never get there. Well, let me back up. Is that right? Not quite. How is that not right?  Let me back up. I think we'll get to the same place, but I just want to be really careful about the words that I use. So when an insurer makes an initial determination, you know, all of these insurance companies have access to a shared database that gives them information about where other coverage comes from. They don't just pull out of a hat an idea, a hypothesis that there's some other source of coverage. They have a reason for that, issuing that decision in the first place. And so when they issue that, an EOB, an explanation of benefits, that tells the insured, in this case Ms. Mendoza, we believe that there is other primary insurance, we're secondary. The EOB, much like the plan itself, gives the insured very specific instructions about what to do. And this is standard across insurance. Go to your other insurance, ask them to cover these claims, you then will get EOBs, explanations of benefits from that insurer. Maybe that insurer denies coverage. Maybe it provides coverage. Whatever it does, you then come back to Aetna with those EOBs. And these insurers then coordinate. In this database of all the insurance plans or whatever, does that mean that you guys actually have access to the husband's plan? You can see it? We can see what the insurer is, which insurer is, another major carrier. And ultimately we can see whether or not coverage was in fact provided. So why didn't you attach it to the motion to dismiss? I think that it's a timing issue. I don't know, Your Honor, the exact answer because I wasn't trial counsel and I wasn't involved in the case. I mean, it just seems like if you're right, you've got the database, you can see it. This is the easiest thing in the world. Attach the thing to the motion to dismiss, motion's probably granted if you're right about how to read the policy. Well, I think here there was recognition that the complaint fails on its face. So appellant comes to this court speaking about Mr. Mendoza's birthday as if it's an unknown fact to the plaintiff. Well, I think what she wants to say is we don't need to talk about Mendoza's birthday because look at 22, 23, and 27. All of those say we don't have coverage for the newborns under his plan. So there is no contest between plans. There is no birthday rule analysis. Forget about it. I think, Judge, you've hit exactly on the issue. When it comes to alleging that there's no coverage, all you have in her complaint is a repeated assertion, conclusory assertion, a legal conclusion masquerading as fact that there's no coverage for the newborns under Mr. Mendoza's plan. Why do you say that's a legal conclusion? Why do you say that's a legal conclusion? Well, because that requires an interpretation of his plan. And here, what we don't have is striking. We do not have any allegation that Ms. Mendoza went to the plan and asked the plan whether it would, Mr. Mendoza's plan, whether it would provide coverage and was told it would not. There's no assertion that she submitted claims and they were denied because Mr. Mendoza's plan said it doesn't provide that automatic pre-enrollment coverage for newborns. You asked the question earlier about whether it's more likely if it's a mother or a father, whether there's a gendered element here. There is not. And you can see this in Aetna's own plan. The easiest way to prove that would be to attach his plan to your motion to dismiss. I may be dead wrong about this. Well, I don't think that we have. The judge in the goal thinks I'm wrong, and she may be right that I'm wrong. But the easiest way to prove me wrong is to attach the policy. Well, so two things here. I don't think we have a copy of his policy, per se. Again, this database provides information about who provides the policy, general information. But if you look at Aetna's plan, for example, it provides, and this is a standard plan, it provides coverage to you, the insured. You is defined to include you, dependent children. It does not speak in terms of whether you as a man or a woman. But this sort of goes back to the initial question. I actually don't know that realistically you could have attached the husband's plan to your motion to dismiss because it's not, I'm not sure it's the same as if they had just said the plan in the complaint, the wife's plan in the complaint. But regardless, isn't this discussion that we're having back and forth, isn't this why it would be more appropriate to send it back so that the husband's insurance carrier could be joined, and then there could be a determination whether it could be another motion to dismiss, or it could be a motion for summary judgment. I guess you could do a motion for judgment on the pleadings. I think if we are to recognize, I mean, the thing is that at the end of the day, there's attorney's fees involved in an insurance case, so, you know. The Supreme Court in Iqbal makes clear what the standard is for a complaint. And the problems that we run into here are the problems that Iqbal and Twombly confront. In her appellate brief, yeah. For a second, and I'll let you continue. But here the district court used our blankenship test. So you're talking about Twombly and Iqbal and our pleading standards. Do you agree that the blankenship test was inappropriate to use at this stage? The blankenship test the court was using is just a framework to explain that it was looking in the first instance at whether or not there was legal error. The most basic version.   It's a judicial standard of review framework, right? When we have, when the court has the entire record before it, and it's deciding what to assess and the order in which to assess it. Here we are just looking at the pleadings, right? Exactly. So the blankenship test does not really, should not really factor into that analysis. Well, I don't know that there's any difference here between the two in that for there to be a proper cause of action, and we can talk about the Iqbal-Twombly standard. But for an ERISA 502A1B, wrongful denial of claim, what are the basic elements of that? And here the problem we run into is that we have a complaint that asserts that the denial was wrongful. The denial was based on this primary coverage versus secondary insurer positioning sequencing issue. The birthday rule is, as Judge Lagoa noted, laid out very clearly in the plan documents that the plaintiff had in her possession. There was no secret about what the basis for this determination is when it comes to primary versus secondary coverage for newborns, for automatic newborn coverage. At a minimum, you need a complaint that explains why the denial was wrongful. The only thing you have in this complaint is repeated statements that the twins were not covered by the father's plan. You have no explanation as to why that would be true. You have no statement that the father's plan doesn't do the thing that ERISA plans do in the state of Florida as a matter of course, which is provide this automatic newborn coverage. I mean, and normally don't, normally when you have a hospital stay, normally the insurance company will send a letter saying, do you have other coverage? Correct. And then you normally send it back saying yes or no. Do you have any secondary coverage, right? Do you know if this was done here? Certainly, Aetna repeatedly did this. Ms. Mendoza was repeatedly told that this was the issue, that there was other coverage believed to be primary, that she needed to go to the other insurer, get EOBs, and come back to Aetna. This happened time and time again, initially when the claims were submitted, when there was a first administrative appeal, and then when there was a second administrative appeal, in back and forth before the litigation was filed. And frankly, during the course of this litigation, again, she has been repeatedly told what the process looks like. This is not novel, and it's not a mystery as to how this works. This is standard course of action. When an insurer denies claims because there's other primary insurance, it's not a, we will never pay anything. It's follow the process laid out in the letter we've sent you that tells you, go to the other insurer, and then come back to us. Primary coverage and secondary coverage. Primary coverage covers, I don't know, X, 50% or whatever the contract is. And then secondary carrier provides, probably normally covers the remainder, or there's a small portion left for the patient to pay. Right. Here, Aetna is not disputing that it would operate as the secondary payer. And so if there was a delta, and more money needed to be paid, it would pay on those claims. Those EOBs have not been submitted. But the key here is that Ms. Mendoza has never alleged, nor can she, that Mr. Mendoza's insurance denied its position as primary payer and refused these claims. That's not an allegation here. And that's the key allegation that would allow her to continue. Can I ask you a question? Isn't this, you know, since we've been having this back and forth, it sounds to me like at the end of the day, this is almost like a, it should really be a declaratory action where the district court judge makes a determination of who should be primary and who should be secondary. I think, Your Honor, that is certainly a way that this case can be resolved. If we want to prolong it, but it has now been going on for years. And at this point, opposing counsel can't, in good faith, stand before the court and suggest that Mr. Mendoza's birthday falls later than Ms. Mendoza's birthday. There's never been a suggestion that if they were to have a remand, that would be an allegation that would be made, because it can't be made. There's similarly- Rule 11 exists for a reason. So obviously- And similarly, when it comes to whether or not there is a primary payer, there's a reason these allegations are missing from the complaint, because they cannot, in good faith, be made. And so we had a judge here, and this is where I would just take the court back to Iqbal and Twombly. The courts recognize that plaintiffs can't put their head in the sand about facts that are known to the plaintiffs, and judges are not required to put on blinders and ignore what they know about how insurance operates or how the world works. I understand, but we're hearing a motion to dismiss, and obviously, opposing counsel, if we sent this back, would have to make a determination about whether or not they could make a good faith filing. That's absolutely right, Your Honor. But here, because they couldn't make a good faith filing, they didn't put any of these allegations, these critical allegations that a claim would turn on, a cause of action would turn on, into the complaint. And it sends... I think maybe I'm not quite following. I take the crux of your response with respect to paragraphs 22, 23, and 27 to be that she didn't go far enough because she didn't say, I've gone to the husband's plan, made a claim, it's been denied, now will you please cover me? Why does she have to do all of that and allege all of that instead of just saying, no enrollment, no coverage, no insurance? So I think the issue here is we... No enrollment is a red herring. It's not relevant.  I'll give you that. And she seems to concede that at this point. Agreed, agreed. So no coverage is the key here. And what you can't do in a complaint is say that this is rendered plausible because I've announced it to be so. There needs to be a factual predicate for that allegation. We can't just state a conclusion, particularly when we have the kind of context specific task of looking with judicial experience and common sense, looking at a complaint. So if you'll bear with me, let's just look at paragraphs 22 and 23 because I think this is really the heart of it. Instead of saying, I went to the plan and asked at a minimum whether there'd be coverage. She says only that she asked the employer for Mr. Mendoza and got confirmation that he was on a single person plan. That's not the relevant question to be asking. That's not an allegation that has any utility here because a single person plan also would provide the kind of automatic 30 day newborn coverage that's at issue in this litigation. Or could. Could. Well, in Florida, actually, I mean, as a matter of course, there are regulations to this effect and even plans that are not subject directly to those regulations because as regulated entities, they do as a matter of course, they do provide that coverage and the district court. So as a matter of course, that it's the kind of thing that we could take judicial notice of. I think the district court properly recognized that you certainly can't assume the opposite. And what this complaint asks you to do without making the allegation is to assume with no factual predicate to make it plausible, simply to assume that because it's possible, the very standard that the Supreme Court rejected in Iqbal and Twomley, because it's possible that his plan might not provide coverage, that the court must assume that it doesn't provide coverage. That's not what's meant when we say that we take the allegations and the complaint is true. When we take allegations and the complaint is true, it's well pled factual allegations that have a predicate. This is not a predicate for a conclusion that there's no coverage, particularly against the backdrop of how insurance operates. Can I ask you this? And I know, I know we've carried you over your time, but, and I don't expect you to have the citation. Maybe you do, but I don't expect you to have it with you. But either, would you give us the citation or provide in a supplemental notice, a citation to the regulations that you're describing that say, this is just how it goes in Florida. And then we'll give your opponent an opportunity.  Florida statute 627.6575 has relevant... I'm sorry, will you do that one more time? Sure. 627.6575. Okay. Now, I want to be clear. I'm not suggesting that for, we don't, at least as far as the complaint goes, we have no details about Mr. Mendoza's plan. So could his plan be some type of plan that falls outside? Well, let me stop myself. We have one critical piece of information about Mr. Mendoza's plan. That takes us back to paragraph 23, your honor. It says that Ms. Mendoza went to Mr. Mendoza's employer. So we do know that his insurance is employer provided coverage, that is group coverage. And it is that type of coverage where it is an industry standard in Florida to provide this automatic 30-day coverage. We don't know more about that plan per the complaint. And so I'm not suggesting that this statute is the answer. That's why it's not at issue in our briefs, because we're not claiming that it was required as a matter of law. What we're saying is there is certainly no basis for assuming with no factual predicate that the plan didn't provide coverage, essentially assuming that Aetna's determination was wrong. And I think the blankenship comes in, at least insofar as it reminds us that in this kind of a context, there is ultimately deference to reasonable determinations by the insurers. And so when you're writing a complaint in this space, it would be important to make out ultimately a defensible cause of action to be making allegations about error and unreasonableness. And here, we don't have anything that even gets us to the point of plausible inferences that the twins were not covered by Mr. Mendoza's plan. We can send, you know, if the panel takes the case back, this will obviously all come to light as a factual matter, because the facts are the facts. But I think it sends the wrong message to litigants if a complaint can simply put its head in the sand about known facts. Mr. Mendoza's birthday was known. It's not alleged, but it was obviously known. And Mr. Mendoza's insurance was known. My opposing counsel suggests we should be the ones putting his plan forward, but obviously they would be better positioned to do that. We're simply in a position to acknowledge to this court that it was not based on nothing that Aetna reached the determination that it did. Is if you're saying that, as they say in their paragraph 27, Aetna's position is incorrect, inappropriate, and baseless, and that you're the primary carrier, then they should have plausibly alleged why. That's right. This is otherwise. Why you're wrong. Exactly. This is precisely the kind of conclusory assertion, a legal conclusion masquerading as a factual allegation simply to say you're wrong, you're not secondary, you're primary, therefore we win, doesn't tell this court, didn't tell the district court what it needed to know to understand why that would be a plausible, not just possible. Much of today's argument, my opposing counsel spoke about all the things that would be possible, but that is not the legal standard. And the no set of facts standard that's cited in her opening brief is precisely the standard that the Supreme Court rejected in Twombly and Iqbal. Let me ask you one question and maybe I'll just ask you to give me a yes or no answer because we've carried you way beyond your time. You just mentioned that she would, that your opponent would have been better situated to put the husband's plan, to attach the husband's plan to her complaint or something, and maybe that's true. Do you have it? Do you or does Aetna have the father's plan? Just as an officer of the court, can you tell me do you have it? So I can tell you that we know who the carrier is from this database, that we know which major carrier it is. We know that they ultimately agreed that they were primary for the first 30 days. Again, that's obviously not in the record, but we know that and that they paid on claims. We haven't obtained from them a copy of the coverage, but you can go into the world and look for copies of plans because these are not individualized contracts that are written for men versus women or written for different individuals. These are standard plans. So I don't know that, we don't have the copy that Mr. Mendoza has, but we are cognizant of its terms. And so does that mean, and I'm not asking you to reveal attorney-client privileges or strategic decisions that you made with your client, but does that mean that you had a copy of this boilerplate plan when you moved to dismiss and opted not to attach it? I don't know the answer to that because, again, I think there is a timing issue of what became available when within this shared database. I believe at the point that Aetna made a determination that it was secondary and sent the EOB, which is an invitation to the insured and a direction to the insured to go to the other and then come back, right? It's not slamming the door on Aetna ultimately paying something. It's simply saying, come back with the EOBs from the other insurer. At that point, they knew enough to know that there was other insurance and to know the birth dates. And that's the basis on which they issue those EOBs, which by the way, are issued as early as January 2021. So this is a long time now that Aetna has been telling the insured that this is the situation. So they know that much. Do they know the precise terms of his plan? No. At that point, they don't. And so what they can't predict is exactly what coverage his plan may or may not provide. To know that, Ms. Mendoza's family needs to do what is explained in the EOBs, in the plan, in the administrative appeal decisions, which is to go to the other insurer, to go to United in this case, submit the claims, and bring whatever answer United provides back to Aetna. Essentially to allow the insurers to do what they're supposed to do, which is coordinate benefits. Okay. Very good. Thank you so much. Thank you, Your Honor. For your patience and endurance. Ms. Newell, you've got five minutes remaining. Thank you, Your Honor. And endurance is the word. I mean, opposing counsel just stood up here and talked about the message to litigants that this could potentially send. Well, let's look at that, right? We have an insurance company who's giving a denial that just says we're secondary. Okay, but you had an appeals process, correct?  And this is not, that's not accurate statement, Counselor, is it? Ms. Mendoza went through the appeals process. Right. So she knows why the coverage was denied. As far as I know, and I'm, look, I was not involved in the pre-litigation workup on this. I was not involved in the decision. Okay, but if you stand here in front of this panel, then I expect that you're going to know what happened below. I know what was planned. You cannot stand here at this podium and tell us that you have not reviewed what happened below other than what is in this, in these briefs. Is that what your position is here? My position is that this court's standard of review is limited to the four corners of the complaint, and that's what I need to be prepared to discuss with this court. That is my position. This is a motion to dismiss that was granted with prejudice. This is a four corners of the complaint situation. Well, paragraph 24 says plaintiff submitted an appeal, the first appeal. Correct. The appeal provided additional information. Do you know what the additional information that was provided? I don't know the additional information. You do not, because you did not review that. So, as an officer of the court, you're going to stand here and tell us you don't know what happened at that appeal. I don't, and neither did the trial judge. I don't, Your Honor, and you know, I think it's important to look at the allegations of the complaint and whether there is factual support. There was an allusion to paragraph 22, okay, and as the primary character, carrier. You understand that when you file a pleading, and you sign it, and you sign a certificate of service, that you are making a good faith filing before the district court and before this court. Absolutely, Your Honor, and I believe that my co-counsel at the trial level did just that. Again, we are making a supposition regarding the father. Let's move past just the general notion that in Florida, every single employer-based plan is going to provide this pre-enrollment coverage, okay? Let's look, let's assume that's true. Well, it is true. Yes. I happen to know what Florida law is, and that, in fact, is true. Well, assuming that the father's plan is subject to Florida law, right? Are you suggesting he is not an employee in Florida? I'm suggesting that that is not in the pleadings, and there's no answer. I'm asking you as an officer of the court. Yes, Your Honor, and I do not know the answer to that. If you look at the COB provisions, there's actually four COBs that could be applicable to a dependent child, okay? Those vary depending on whether the parents are married. There's no allegation that it's a husband. There's no allegation as to whether the parties are separated. Opposing counsel got up here and made a very compelling argument for an affirmative defense. Everything that was said could absolutely have been pled, and those items could have been provided. Opposing counsel could have brought up Section 627.6575. They could have asked for judicial notice. They simply didn't. What they did is ask for a mandatory joinder. Why? So that the court could determine whether the father's insurance was primary. That's not from the appellant. That's not from the plaintiff. That's from the defendant. That's what the defendant asked for. So we would ask this court to reverse and remand so that that mandatory joinder can take place, and these factual questions, factual questions that are outside the record currently, can be put forward and can be determined at that time. As Your Honor mentioned, it's going to be up to the trial attorney and the client to decide whether, in fact, Rule 11 comes into play. But assuming that it comes into play based on the argument of counsel on an appeal is, quite frankly, a little beyond the pale. Finally, I think that Judge Kidd had a very interesting comment about the standard that was applied. Judge Scola jumped the gun. And I think that's what's happening here. The deference that would be due to the insurer is based on what was in the insurance file. So Judge Newsom brought it up and asked point blank, did you have the insurance policy of the father? No. Okay? So they don't have the insurance policy of the father now. Was that the fault of the appellant? Should there be some sort of a good faith problem that they raised against the plaintiff? That's not a question for today, right? The question is, did the court correctly dismiss this complaint with prejudice? Let me ask you the same question that I asked her. As an officer of the court, do you have the father's plan? I have not seen personally the father's plan, no. But I do know, based on the pleading, which is paragraph 23, that there was a conversation and this was already discussed, but I would like to just read it into the record more fully, right? The employer for Ms. Mendoza confirmed that the plan the father has never had the twins or Ms. Mendoza enrolled and has always been a single person plan. It is unclear why Aetna continues to take the position that it is secondary when there is no other coverage available to this family. Okay? Paragraph 27, part that wasn't read. The twins and Ms. Mendoza did not have any other insurance or coverage for the above referenced date of service. That goes beyond a conclusory statement that Aetna's not secondary. That goes beyond. Okay? There's also an allegation in 22. It's the second full, I'm sorry, the third full sentence. While the father, Paul Mendoza, had insurance through his employer, his insurance plan is a single person insurance plan and Ms. Mendoza nor the twins have ever been enrolled under the follows plan. For those reasons, the court erroneously dismissed this complaint with prejudice. It should be remanded so that the mandatory joinder can take place and these factual issues can be properly resolved. Thank you. Very well. Thank you both. That case is submitted. We'll be in recess until 9 o'clock tomorrow morning.